**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1024
_____


RAHEEM WILCOX,
                    Appellant

v.

WARDEN NEW JERSEY STATE PRISON;
ATTORNEY GENERAL NEW JERSEY


_____


Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 1-13-cv-03524)
District Judge: Honorable Jerome B. Simandle
_____

Argued: November 14, 2017
_____

Before: VANASKIE, SHWARTZ, and FUENTES, Circuit Judges.

(Filed: January 8, 2018)


_____

OPINION[*]
_____



_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

George A. Bibikos, Esq. [ARGUED][1]
Cozen O'Connor
17 N. Second Street, Suite 1410
Harrisburg, PA 17101
        *Counsel for Appellant*

Grace H. Park
Acting Prosecutor of Union County

Milton S. Leibowitz [ARGUED]
Special Deputy Attorney General/Acting Assistant Prosecutor

Kimberly L. Donnelly, Esq.
Union County Prosecutor's Office
32 Rahway Avenue
Elizabeth, NJ 07202
        *Counsel for Appellees*

SHWARTZ, Circuit Judge.

Raheem Wilcox was convicted of murder and weapons offenses and sentenced to 40 years in prison. Wilcox filed a habeas petition, asserting that his counsel was ineffective for failing to present at sentencing two expert reports detailing his troubled background and diminished mental health. The District Court denied his petition. For the reasons set forth herein, we will affirm.

I

A

Wilcox and his then-girlfriend, Ernestine Williams, worked at Federal Express. On the morning of April 13, 2000, Wilcox took three knives to work. Before entering the

---

[1] We thank Appellant's counsel and his firm for accepting the pro bono appointment and for their very able representation. Lawyers who act pro bono provide the highest service that the bar can offer.

building, he hid the knives under a trailer. After his work shift ended, he retrieved the knives and accompanied Williams to her car in the parking lot, where he stabbed her to death. Wilcox was charged with first-degree murder, third-degree possession of a weapon for an unlawful purpose, and fourth-degree unlawful possession of a weapon and found guilty of all counts. He faced a minimum sentence of thirty years and a maximum of life imprisonment. N.J. Stat. § 2C:11-3(b)(1).

At sentencing, his counsel submitted work records, school records, and numerous character letters. Trial counsel explained that "what Mr. Wilcox did [] was an aberration." App. 207. He described Wilcox as "a law-abiding good person who let the emotions get the better of him and did a horrible thing," App. 208, and added:

> And I think what happened after the anger and rage of what he had done, when he realized what he had done, the real Mr. Wilcox came back in a few hours. And you saw that he was an honest, caring person who could not believe what he had done.

App. 210. Wilcox's sister also spoke on his behalf and stated that "obviously he killed [Williams] because he let his emotions get involved." App. 214. Wilcox himself similarly described to the sentencing judge the role of his emotions in the murder:

> [W]hat I experienced that night was an emotional frenzy that caused me to lose control of myself and what triggered this sudden rush of blind passion was the fact that I was taunted.
>
> . . .
>
> As hard as it may seem to fathom, but love make[s] you do crazy things. This crime was totally out of character . . . .

App. 222-23.

3

In selecting a sentence, the sentencing judge considered the aggravating and mitigating factors set forth in N.J. Stat. § 2C:44-1.  The sentencing judge applied mitigating factor 7, "[t]he defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense,"  N.J. Stat. § 2C:44-1b(7), because Wilcox did not have a "long history of prior crimes, whether they be violent or non-violent."  App. 225.  He also applied mitigating factor 12 because Wilcox cooperated with law enforcement after committing the crime.  The sentencing judge stated that he did not apply mitigating factor 8, "the defendant's conduct was the result of circumstances unlikely to recur," or mitigating factor 9, that "the character and attitude of the defendant indicate that he is unlikely to commit another offense," because he had not seen any psychological evaluations.  N.J. Stat. § 2C:44-1b(8) & (9).

The sentencing judge applied aggravating factor 9, "the need for deterring the defendant and others from violating the law," § 2C:44-1a(9), and aggravating factor 3, "that there is a risk the defendant will commit another offense." [2]  App. 226.  He found that there were "not serious aggravating, extenuating factors beyond premeditated murder that would justify putting this case into the high end of the sentencing range for a premeditated murder."  App. 225.  The sentencing judge concluded that the "aggravating

---

[2] With respect to aggravating factor 3, the sentencing judge noted that the State had not submitted any psychological evaluations.

factors somewhat outweigh the mitigating factors" and sentenced Wilcox to forty years' imprisonment with thirty years parole ineligibility.[3] App. 227.

Wilcox appealed his conviction and sentence. The Appellate Division affirmed and the New Jersey Supreme Court denied certification.

B

Wilcox filed a petition for post-conviction relief ("PCR"), which was assigned to the trial judge. In his PCR petition, Wilcox alleged, among other things, that he received ineffective assistance of counsel because his trial counsel did not submit at sentencing the psychological evaluations he obtained for use at trial regarding his troubled background and mental health history. Robert Latimer, M.D., a board certified psychiatrist, prepared a report that concluded Wilcox was: (a) "exposed to Post Traumatic Stress Disorder stemming from early childhood experiences"; (b) "vulnerable to Discontrol when under stress and in an impassioned state of mind"; and (c) "unable to appreciate the quality of his acts" at the time of the stabbing. App. 61-63. Dr. Matthew Johnson, a licensed psychologist, opined that: (a) Wilcox was "suffering with post-traumatic residual symptoms resulting from the circumstances of his upbringing"; (b) Wilcox's "psychological controls were diminished" due to his background and the emotional

---

[3] While the sentencing judge orally stated that "aggravating factor 1 [whether the crime was committed in an especially heinous, cruel or depraved manner] . . . exists to a certain extent but not a major extent," App. 226, the written judgment does not identify aggravating factor 1 as a factor the court weighed against the mitigating factors.

5

impact of his relationship with Williams; and (c) Wilcox "did not appreciate the potential seriousness of his attack" on Williams.  App. 74.

The reports also revealed conflict in Wilcox and Williams's relationship.  Both reports show that Wilcox noted that Williams "was afraid he would kill her," App. 70, and recounted an incident in which Wilcox "slashed one of her car tires" out of anger. App. 50; 70.  Latimer's report contained Wilcox's sister's statement that Wilcox told her "that he wanted to strike" Williams, App. 53, and Wilcox's admission that he "thought of hurting" Williams before work on the day he ultimately murdered her.  App. 54.

The PCR court dismissed Wilcox's contention that his trial counsel rendered ineffective assistance by not presenting these reports at sentencing.  Although the reports themselves were not presented, PCR counsel described their contents.[4]  After hearing the descriptions and counsels' arguments, the PCR court found that the contention that counsel provided ineffective assistance was "not supported by the record" and that trial counsel had "made the best argument he could make under the facts of this case, which were very difficult, and in light of the overwhelming nature of the case, anything else that he conceivably could have said wouldn't have made any difference."  App. 273.  The Appellate Division affirmed, noting that Wilcox's claim "does not take into account the

---

[4] See App. 259 (noting that the experts had information about Wilcox's "history, how he was raised, raised in a violent environment and [how] he's a product of his environment"), 260 (explaining that the experts' reports and testimony would "go[] to the issue of . . . [Wilcox being] so in love with this girl when he found out what she was doing on a continuous basis, he 'snapped'"), 263 (explaining that the experts described Wilcox as "recovering from post-traumatic stress disorder stemming from an abusive childhood in which violence surrounded him").

6

weight the court might have given to the State's evidence of defendant's mental status when the crime was committed" and attributed the decision to "forego presentation of the reports" to "strategy." App. 292. The New Jersey Supreme Court denied certification.

Wilcox then filed a petition for a writ of habeas corpus in the District Court. The District Court denied the petition with prejudice without a hearing. The District Court concluded that trial counsel's decision not to use the mental health reports was strategic and held that the "Appellate Division's determination that counsel was not deficient in failing to use the previously obtained mental health reports at trial or sentencing is not contrary to, or an unreasonable application of Strickland and its progeny." App. 35.

Wilcox appealed, and this Court granted a certificate of appealability "as to Wilcox's claim that his Sixth Amendment rights were violated when trial counsel failed to present available expert psychiatric reports at sentencing." App. 44.

II[5]

A

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2241-2254, restricts a federal court's power to grant a writ of habeas corpus when a state court has already denied such a claim on the merits. E.g., Branch v. Sweeney, 758 F.3d 226, 232-33 (3d Cir. 2014) (stating that the AEDPA "significantly

---

[5] The District Court had jurisdiction under 28 U.S.C. § 2254(a). We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a). "Because the District Court did not conduct an evidentiary hearing before ruling on the habeas petition, our review is plenary and we conduct our analysis as the District Court did." Blystone v. Horn, 664 F.3d 397, 416-17 (3d Cir. 2011) (internal citations omitted).

7

limited the federal courts' power to grant a writ of habeas corpus" and noting the limitations where a state court rejected a petition on the merits).[6] A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1); Blystone v. Horn, 664 F.3d 397, 417 (3d Cir. 2011).[7] A state court decision is "contrary to" clearly established law "if it applies a rule that contradicts the governing law set forth in the [Supreme] Court's cases or if it confronts a set of facts that are materially indistinguishable from a decision of the [Supreme] Court and nevertheless arrives at a result different from the [Supreme] Court's precedent." Blystone, 664 F.3d at 417 (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). "A state court decision is objectively unreasonable if the state court identifies the correct governing principle from the

---

[6] Wilcox contends that AEDPA does not restrict this Court's review of his sentencing phase ineffective assistance of counsel claim because the PCR court did not render a decision on that claim and the Appellate Division's rejection of that claim is "irrelevant." Reply Br. 4. Wilcox is mistaken. Because the highest state court opinion on Wilcox's claim is an unexplained order from the New Jersey Supreme Court, "we look through the higher state court-opinion and apply § 2254(d)'s standards to the highest reasoned opinion." Blystone, 664 F.3d at 417 n.15 (internal quotation marks and alterations omitted). The highest reasoned opinion is the Appellate Division's opinion, which rejects the sentencing phase ineffective assistance claim because the "decision to forego presentation of the reports . . . [was] one of strategy." App. 292. Its resolution of the claim on the merits limits our review under § 2254(d).

[7] Under § 2254(d)(2), a court may also grant relief if the state court decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wilcox does not challenge the state court decision on this basis.

Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. (internal citations, quotation marks, and alterations omitted).

The governing principle for ineffective assistance of counsel claims is the Supreme Court's two-part test in Strickland: "To succeed on such a claim, the petitioner must demonstrate (1) that counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) that the petitioner suffered prejudice as a result of the deficiency." Blystone, 664 F.3d at 418 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

The PCR court and the Appellate Division applied Strickland to Wilcox's sentencing phase ineffective assistance of counsel claim. See App. 273, 289. Because Wilcox has not disputed that the state court recited the correct standard or shown that it arrived at a result different from a materially indistinguishable case decided by the Supreme Court, he has not shown that the state court decision was contrary to federal law. Thus, he may obtain relief only if he shows that the state court's application of Strickland was objectively unreasonable. For the reasons that follow, he has failed to do so.

B

With respect to Strickland's first prong, there is a "strong presumption" that counsel's performance was not deficient. Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). Here, the Appellate Division found that counsel's performance was not deficient because the decision to withhold the reports was "one of strategy." App. 292.

9

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690. Trial counsel investigated Wilcox's background and mental health by retaining two experts. The experts interviewed Wilcox, reviewed other materials, and prepared reports summarizing their findings. Trial counsel had the reports prior to sentencing. Thus, the facts do not show counsel failed to investigate material that may be relevant to sentencing.[8]

The issue here is whether counsel was deficient in failing to present the reports. Statements contained in the reports would have undercut counsel's sentencing strategy to present the murder as an emotionally driven aberration from Wilcox's normal conduct. During the sentencing, counsel described Wilcox as "a law-abiding good person who let the emotions get the better of him and did a horrible thing." App. 208. He explained that, "after the anger and rage of what he had done . . . the real Mr. Wilcox came back . . . ." App 210. When Wilcox's sister spoke at sentencing, she framed his decision to murder Williams as "obviously" the result of "his emotions." App. 214. Wilcox told the sentencing judge that "what [he] experienced that night was an emotional frenzy that caused [him] to lose control of [himself] . . . ." App. 222. He assured the sentencing judge that the "crime was totally out of character" and driven by "love." App. 223.

---

[8] For this reason, this case is distinguishable from the cases Wilcox cites and which hold that counsel's failure to both investigate and present mitigation evidence at sentencing amounts to a deficient performance.

Trial counsel's strategically selected theme would have been undermined by the reports, which contained statements revealing that Wilcox had previously contemplated harming Williams. Latimer's report contained Wilcox's admission that he "thought of hurting" Williams before work on the day he murdered her. App. 54. Wilcox's sister admitted to Latimer that Wilcox told her "that he wanted to strike" Williams. App. 53. In interviews with Johnson and Latimer, Wilcox noted that Williams "was afraid he would kill her." App. 70. These statements demonstrate that Wilcox had contemplated hurting Williams, or Williams had reason to fear Wilcox would hurt her, prior to the murder.[9] Trial counsel's decision not to offer the reports allowed him to portray the violent stabbing as an isolated incident without having to deal with events that would undermine this view. Thus, his decision not to offer the reports at sentencing is

---

[9] Wilcox asserts that, under Outten v. Kearney, 464 F.3d 401 (3d Cir. 2006), counsel cannot withhold mitigating evidence merely because it may contain some "bad information." Appellant Br. 27-28. Outten does not stand for that proposition. In Outten, trial counsel had failed to investigate records concerning a range of mitigating factors. The fact that the investigation may have disclosed unfavorable evidence did not excuse trial counsel from investigating the records to determine whether "the net result of any investigation would be negative." Id. at 422. We have explained that the significance of requiring counsel to conduct a full investigation was not that "trial counsel may . . . have introduced into evidence all of Outten's records at sentencing . . . [but that] the records most certainly would have informed counsel's preparation." Id. Here, trial counsel did investigate Wilcox's mental health, obtained reports about it, and, as allowed for under Outten, made an informed decision when he declined to introduce them. Furthermore, unlike in Outten, where "much of the aggravating evidence in the records was either introduced or elicited on cross-examination by the State at sentencing," the harmful information contained in the reports at issue here would not come before the sentencing judge unless the reports were presented to him. 464 F.3d at 422. Thus, we cannot criticize trial counsel for deciding not to present the reports at sentencing.

consistent with the "wide latitude counsel must have in making tactical decisions." Strickland, 466 U.S. at 689.

Accordingly, Wilcox has failed to demonstrate that the state court unreasonably applied Strickland in concluding that his counsel's performance was not deficient.

C

Even if trial counsel's performance was deficient, Wilcox has failed to establish prejudice. "To establish prejudice the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Blystone, 664 F.3d at 418 (citing Strickland, 466 U.S. at 694) (internal quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. To determine whether trial counsel's failure to present certain mitigating evidence was prejudicial, a court "must reconstruct the record and assess it anew. In so doing, [the Court] cannot merely consider the mitigation evidence that went unmentioned in the first instance; [it] must also take account of the anti-mitigation evidence that the [prosecution] would have presented to rebut the petitioner's mitigation testimony." Williams v. Beard, 637 F.3d 195, 227 (3d Cir. 2011) (citing Wong v. Belmontes, 558 U.S. 15, 26 (2009)). Thus, after reconstructing the record, the court must "reweigh the evidence in aggravation against the totality of available mitigation evidence." Wiggins, 539 U.S. at 534.

The reconstructed record does not support Wilcox's claim that if not for trial counsel's failure to present the reports, there is a reasonable probability he would have received a lower sentence. Had these reports been presented, the State likely would have

12

produced its expert report, which repeated unfavorable information about Wilcox, and concluded that the theories set forth by Wilcox's experts were "creative," "fanciful," and "entirely speculative." App. 84. Thus, Wilcox's assumption that the reports "offered evidence of 'substantial grounds tending to excuse or justify' [his] behavior under N.J. Stat. § 2C:44-1b(4)," Appellant Br. 24, "does not take into account the weight the court might have given to the State's evidence of defendant's mental status when the crime was committed," App. 292, and ignores the impact of the unfavorable statements contained in all of the reports.

Moreover, the same judge who sentenced Wilcox reviewed Wilcox's PCR petition. At the PCR hearing, that judge was informed about the contents of the reports, which stated that Wilcox suffered post-traumatic stress disorder arising from a violent and abusive childhood and that this background, together with his suspicions about his girlfriend, caused him to lose control. After hearing the description of the reports and arguments concerning trial counsel's alleged ineffectiveness at sentencing, the judge found that trial counsel "made the best argument he could make under the facts of this case, which were very difficult, and in light of the overwhelming nature of the case, anything else that he conceivably could have said wouldn't have made any difference." App. 273. These comments further show that it is unlikely the sentencing judge would have imposed a lesser sentence if he were presented with the full reports.

Because the reports may have derailed efforts to portray the incident as an aberration, and the record does not show that there is a reasonable probability they would

have made a difference, Wilcox has failed to demonstrate that he was prejudiced by trial counsel's failure to present the reports at sentencing.

III

For the foregoing reasons, we will affirm the order of the District Court.